Filed 6/25/14  P. v. Taghilou CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FARAMARZ TAGHILOU,<br><br>    Defendant and Appellant. | B248510<br><br>(Los Angeles County<br>Super. Ct. No. A708409) |

APPEAL from an order of the Superior Court of Los Angeles County, Harvey Giss, Judge.  Reversed and remanded.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, State Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

More than 25 years ago, Faramarz Taghilou (Taghilou) entered a no contest plea to one count of oral copulation with a child under 14 in violation of Penal Code section 288a, subdivision (c) [1] and agreed to submit to a diagnostic study (§ 1203.03) in exchange for a "three-year lid," meaning he would be sentenced to no more than three years in prison. At the time, the prosecutor acknowledged she had "witness problems"— "problems of proof." Taghilou was not advised that, as a consequence of his plea to this offense, he would be required to register as a sex offender pursuant to section 290 and that this registration requirement was for the duration of his life.

At Taghilou's sentencing hearing a few months later, based on the diagnostic study as well as the probation officer's report, the trial court credited Taghilou for the time spent with the Department of Corrections for purposes of the diagnostic study and sentenced Taghilou to formal probation for three years, expressly concluding probation was the "appropriate" sentence for Taghilou, not prison. In reciting a list of conditions of Taghilou's probation, the trial court told him he had to "register within the next brief period of time as an offender."

In 1992, after satisfactory completion of his probationary period without further offense, Taghilou was permitted to withdraw his no contest plea and to enter a plea of not guilty, with the case against him dismissed. (§ 1203.4.)

In 1997, Taghilou applied for and the trial court granted him a certificate of rehabilitation. (§ 4852.01.)

In 2012, Taghilou filed a motion to vacate his 1989 conviction and to be relieved of his obligation to register as a sex offender. According to Taghilou, he was notified in 1996 he was obligated to continue to register as a sex offender and did so without

---

[1]     All undesignated statutory references are to the Penal Code unless otherwise indicated.

incident.  In the 25 years since the entry of his no contest plea, he had never had any other "problems of this nature."  In 2011, however, a neighbor discovered Taghilou's status as a convicted sex offender on the Megan's Law web site and publicized his status to the community.  As a result, Taghilou said, he, his wife and his two children were harassed and forced to stay inside their home, and the children had to attend schools outside the community where they lived.  He submitted a declaration stating that, if he had been informed of the lifetime registration requirement at the time of his plea and sentencing, he "would never have pled to the charge but would have gone to trial and asserted [his] defense."  The trial court denied Taghilou's motion, stating the court would grant the motion if it had discretion to do so, but believed it lacked discretion because of the particular Penal Code violation underlying Taghilou's conviction.

Taghilou argues due process and equitable contract principles empowered the trial court to enforce his "bargained-for exchange" which did not include the lifetime registration requirement.  He also says the trial court erred in determining it lacked discretion to relieve him of his obligation to continue to register as a sex offender (§ 290) because a defendant convicted of sexual intercourse with a minor may be excused from the registration requirement and it would violate his constitutional right to equal protection to deny him the same opportunity as he is similarly situated to one convicted of such offense.

Because we agree with Taghilou on the first issue he raises, we reverse and remand for further proceedings.


### FACTUAL AND PROCEDURAL SUMMARY

In 1987, Taghilou was charged with oral copulation of a minor under the age of 14 and more than 10 years younger than Taghilou at the time in violation of section 288a,

3

subdivision (c).  The crime was alleged to have occurred on or about January 16, 1987

(Los Angeles County Superior Court Case No. A708409).[2]

*August 1988 Plea Hearing.*

On August 22, 1988, Taghilou entered a plea of no contest to a violation of section

288a, subdivision (c).[3]  The trial court (Hon. Meredith C. Taylor) observed that, except

for this particular count (count 1), the "remaining counts indicated that this case does fall

within . . . section 1192.7, subdivision (c)(6).[4]  Within the meaning of that provision,"

the trial court asked the prosecutor (Candace Foy-Smith), "what is the basis for the

proposed agreement?"  The prosecutor responded:  "Your Honor, the basis for the

proposed agreement would be witness problems . . . .  Problems of proof[.]"  Pursuant to

the plea agreement, the prosecutor said Taghilou would "plead no contest for three year

lid with a [section] 1203.02 [*sic*, 1203.03 ('Confinement of defendant in Department of

Corrections facility; Procedure; Disposition')] study."[5]

---

[2]      According to the record, Taghilou was 26 at the time.

[3]      Taghilou was represented by attorney J.D. Sacks.

[4]      At the time, subdivision (c)(6) of section 1192.7 identified "lewd or lascivious act
on a child under the age of 14 years" among a list of specified "serious felon[ies]" within
the meaning of this statute.

         Pursuant to subdivision (a) of section 1192.7 as it read at that time, "*Plea
bargaining* in any case in which the indictment or information charges *any serious
felony* . . . is *prohibited, unless there is insufficient evidence to prove the people's case,
or testimony of a material witness cannot be obtained*, or a reduction or dismissal would
not result in a substantial change in sentence."  (Italics added.)

[5]      Section 1203.03 provides:  "(a) In any case in which a defendant is convicted of an
offense punishable by imprisonment in the state prison, the court, if it concludes that a
just disposition of the case requires such diagnosis and treatment services as can be
provided at a diagnostic facility of the Department of Corrections, may order that
defendant be placed temporarily in such facility for a period not to exceed 90 days, with
the further provision in such order that the Director of the Department of Corrections

4

Taghilou was given numerous advisements regarding his constitutional rights and other consequences of his decision to enter a plea, but there was no mention of section 290 or the obligation to register as a sex offender—for life or at all.

The prosecutor then asked Taghilou: "[I]n Case Number A 708409, how do you plead to count 1 occurring on or about January the 16th, 1987, to violation of . . . section 288[]a[,] subdivision [(]c[)], oral copulation of a person under 14 by the name of [the victim's name was stated on the record] who was also more than 10 years younger than you at the time?" "No contest[,]" Taghilou answered. Asked whether he "join[ed] in the waiver and concur[red] in the plea and stipulate[d] to a factual basis[,]" defense counsel responded, "Yes, I do."

The trial court then stated: "Mr. Taghilou, the court does find that your waivers are knowingly, intelligently, and understandingly made, that there is a factual basis for

report to the court his diagnosis and recommendations concerning the defendant within the 90-day period.

"(b) The Director of the Department of Corrections shall, within the 90 days, cause defendant to be observed and examined and shall forward to the court his diagnosis and recommendation concerning the disposition of defendant's case. Such diagnosis and recommendation shall be embodied in a written report and copies of the report shall be served only upon the defendant or his counsel, the probation officer, and the prosecuting attorney by the court receiving such report. After delivery of the copies of the report, the information contained therein shall not be disclosed to anyone else without the consent of the defendant. After disposition of the case, all copies of the report, except the one delivered to the defendant or his counsel, shall be filed in a sealed file and shall be available thereafter only to the defendant or his counsel, the prosecuting attorney, the court, the probation officer, or the Department of Corrections.

"(c) Notwithstanding subdivision (b), the probation officer may retain a copy of the report for the purpose of supervision of the defendant if the defendant is placed on probation by the court. The report and information contained therein shall be confidential and shall not be disclosed to anyone else without the written consent of the defendant. Upon the completion or termination of probation, the copy of the report shall be returned by the probation officer to the sealed file prescribed in subdivision (b)."

5

your plea, that it is freely and voluntarily given. The court does accept your plea of no contest, sir; and on the basis of your plea, the court does find you guilty. . . ." Continuing, the trial court indicated, "we will first order a probation and sentencing report[,]" and when that is received, pursuant to the plea agreement, "we will refer Mr. Taghilou for a report pursuant to [section] 1203.03 . . . ."

*January 1989 Sentencing Hearing.*

On January 5, 1989, the trial court summarized the proceedings of August 22, 1988, when Taghilou entered his no contest plea to count 1 with a "three year lid" as the agreed disposition and it was anticipated that counts 2 through 4 would be dismissed at sentencing. The trial court further noted felony probation had not been precluded. The trial court further stated that, in the interim, the court had received and considered the probation officer's report as well as the section 1203.03 report.[6]

The trial court then stated: "Mr. Taghilou, the Court does have an open plea before it to the extent of a three-year lid. Three years is the low term for a violation of . . . section 288[a, subdivision] (c). I have carefully reviewed the probation officer's report, and the [section] 1203.03 report, and I am prepared to place you on felony probation, believing that it is reasonable and appropriate to the circumstances." When asked if counsel wished to put anything more on the record, defense counsel (Sachs) said: "I will just submit it on the basis of the reports, the letters, and the conference we had in chambers." The prosecutor (Foy-Smith) indicated she had nothing further, "except to put on the record that the People will also be requesting a six-week supplementary, non-appearance report as proof of registration as a sex offender."

---

[6] Although the pagination of the record on appeal is consecutive, it appears a page of the reporter's transcript for January 5, 1989, is missing from the record. (The reporter's transcript for the January 1989 date was submitted as Exhibit 2 to Taghilou's motion to vacate his conviction.) Page 36 of the clerk's transcript in this appeal is page 2 of the reporter's transcript of the proceedings on January 5, 1989, but page 37 of the clerk's transcript in the appeal is page 4 of the January 5, 1989 reporter's transcript and we do not find it elsewhere in the record.

The trial court continued: "Then, Mr. Taghilou, if you are prepared to accept the terms and conditions that I am going to state to you, you will be placed on three years formal probation to the court and the Probation Department. [¶] You are to spend the first 116 days in custody, and you are receiving credit for 77 days actually spent, plus 39 days good time/work time credits for total credits of 116 days. [¶] You are ordered to pay restitution in the amount of $100 to the restitution fund pursuant to . . . section 1203.04 [as the trial court confirmed the prosecutor knew of no restitution owed to the identified victim for any treatment]." The court further advised Taghilou he was "required to cooperate with his probation officer in a plan for continuing counseling to deal with whatever problems you do have including the underlying offense." The court noted defense counsel had requested counseling with a particular counselor (Lilla Hashemi), the probation officer had agreed she was "an appropriate court counselor for [Taghilou]" and indicated the court had no objection to such counseling "at such frequency as your probation officer will direct[.]"

The trial court further ordered Taghilou to seek and maintain training, schooling or employment as approved by his probation officer as well as a residence approved by him or her; to obey all laws and orders of the Court as well as the rules and regulations of the Probation Department; and to pay the cost of his probation services, including the reports that had been prepared.

"You are not to associate with young women under the age of 16. You are not to be in their presence unless there is another adult present with you.

"You are to engage in weekly outpatient psychotherapy. This will be as part of the counseling program that I have stated. The minute order shall reflect that that will be weekly outpatient psychotherapy for a minimum period of two years.

7

"It may be, Mr. Taghilou, that two years is longer than is necessary.  Apparently, however, the persons who engaged in the 1203.03 study do believe that it will be at least that amount of time that you should have that counseling.  Should your treating psychotherapist and your probation officer agree that less than two years is appropriate, you may request a modification, but without a modification, it must be for a minimum of two years.

"You must register within the next brief period of time as an offender, and I am requesting a six-week report from the probation officer.  You will have to show him or her proof that you have registered and do so in a timely fashion, so he or she can have a report to the Court in six weeks time.  We will make that report due on February 16 . . . ."  The trial court ordered a supplemental report "on all terms and conditions" due on June 28, 1989, at which time Taghilou was to return to court.

"The supplemental report will be on all terms and conditions, Mr. Taghilou, but I'm advising you very strongly at this time that I think the most important term is your on-going treatment of therapy both for your own benefit and for the benefit of the rest of society, so if you should fail to observe that term and condition, I will take that as a very serious failing.  [¶] I will be considering at that time imposition of custody as may be appropriate . . . ."  Taghilou indicated he understood, he agreed and he had no questions.  After extending "[b]est wishes" to Taghilou and thanking counsel on both sides "for [their] excellent work in this matter[,]" the trial court granted the prosecutor's motion to dismiss counts 2 through 4.

*July 1992 Dismissal of Case (§ 1203.4).*

On July 24, 1992, pursuant to section 1203.4, as his probationary period had expired without further offense, Taghilou was permitted to withdraw his no contest plea and enter a plea of not guilty, and the trial court, in turn, dismissed the case against him pursuant to section 1203.4, meaning "except as noted [in that statute,]" Taghilou was released "from all penalties and disabilities resulting from the offense of which he [had]

8

been convicted."[7]  According to the trial court's order, although the copy in the clerk's transcript is difficult to read, it appears that "S. Baron" was the deputy district attorney in court that day along with private counsel on behalf of Taghilou—perhaps Sacks.

---

[7]      In 1992, section 1203.4 (change of plea and dismissal of charges after termination of probation; release from penalties and disabilities; subsequent offenses) stated as follows: "(a) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing; however, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery.

"Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 12021.

"This subdivision shall apply to all applications for relief under this section which are filed on or after November 23, 1970.

*August 1997 Certificate of Rehabilitation.*

On August 25, 1997, Taghilou applied for and was granted a "certificate of rehabilitation[,]" which ordered and decreed that Taghilou had been "rehabilitated and is fit to exercise all the civil and political rights of citizenship (except as provided in . . . [s]ection 4852.15 [(which addressed only the effect of the chapter on the power to regulate the practice of a profession or occupation—without any mention of the obligation to register as a sex offender or section 290)]."[8]  According to the trial court's

"(b) Subdivision (a) of this section does not apply to any misdemeanor which is within the provisions of subdivision (b) of Section 42001 of the Vehicle Code, or to any infraction.

"(c) A person who petitions for a change of plea or setting aside of a verdict under this section may be required to reimburse the county for the cost of services rendered at a rate to be determined by the county board of supervisors not to exceed sixty dollars ($60), and to reimburse any city for the cost of services rendered at a rate to be determined by the city council not to exceed sixty dollars ($60). Ability to make this reimbursement shall be determined by the court using the standards set forth in paragraph (2) of subdivision (f) of Section 987.8 and shall not be a prerequisite to a person's eligibility under this section. The court may order reimbursement in any case in which the petitioner appears to have the ability to pay, without undue hardship, all or any portion of the cost for services established pursuant to this subdivision.

"(d) No relief shall be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief. The probation officer shall notify the prosecuting attorney when a petition is filed, pursuant to this section.

"It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

"(e) If, after receiving notice pursuant to subdivision (d), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition."

[8]     According to the Certificate of Rehabilitation, signed and filed with the trial court (Hon. John H. Reid) on August 25, 1997, on a "form prepared under the direction of the office of the Attorney General of the State of California[,]" Taghilou's petition for a certificate of rehabilitation was heard that day, "in open court" and "proof having been

August 25, 1997 minute order, Deputy District Attorney N. Montrose appeared along with J. Barnes, private counsel on behalf of Taghilou.[9]

---

made to the satisfaction of the Court that notice of the time of hearing has been regularly given as required by law; and from satisfactory proof taken at said hearing the Court finds that all allegations of said petition are true, and that the required period of rehabilitation has elapsed since petitioner's date of discharge from custody due to his completion of the term to which he was sentenced, or upon his release on parole or probation on July 24, 1992, that, where appropriate, petitioner has obtained relief pursuant to Penal Code section 1203.4, and that petitioner has demonstrated by his course of conduct his rehabilitation and fitness to exercise all the civil and political rights of citizenship (except as provided in Penal Code section 4852.15 [regarding professional licensing and privileges; see footnote 12, *post*]); and that petitioner has been (once) convicted of a felony:  WHEREFORE, It Is Ordered, Adjudged and Decreed, And this Court does hereby order, adjudge and decree that petitioner has been rehabilitated and is fit to exercise all the civil and political rights of citizenship (except as provided in Penal Code Section 4852.15), and by virtue thereof this court recommends that the Governor of the State of California grant a full pardon to said petitioner."

We note the case number on both the August 25, 1997 minute order and the petition for a certificate of rehabilitation is BA109489, a different number than the original case number.  (The minute order for the July 24, 1992 dismissal pursuant to section 1203.4, however, is the same as Taghilou's original case number (and the case number identified on his motion to vacate his conviction).)

[9]     Section 4852.15 (effect of chapter on power to regulate practice of profession or corporation) provides:  "Nothing in this chapter shall be construed to abridge or impair the power or authority conferred by law on any officer, board, or tribunal to revoke or suspend any right, privilege, or franchise for any act or omission not involved in his or her conviction, or to require the reinstatement of the right or privilege to practice or carry on any profession or occupation the practice or conduct of which requires the possession or obtaining of a license, permit, or certificate. Nothing in this chapter shall affect any provision of Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code or the power or authority conferred by law on the Board of Medical Examiners therein, or the power or authority conferred by law upon any board that issues a certificate permitting any person to practice or apply his or her art or profession on the person of another. Nothing in this chapter shall affect any provision of Chapter 4 (commencing with Section 6000) of Division 3 of the Business and Professions Code or the power or authority in relation to attorneys at law and the practice of the law in the State of California conferred by law upon or otherwise possessed by the courts, or the

*June 2012 Motion to Vacate Conviction.*

Fifteen years after obtaining a certificate of rehabilitation, on June 11, 2012, Taghilou filed a motion to vacate his 1989 conviction for violating section 288a, subdivision (c), on the ground he was not adequately informed by the court of the direct consequence of his plea of no contest to the charge that he would have to register as a sex offender for life pursuant to section 290.

Citing the reporter's transcript of his entry of a no contest plea on August 22, 1988, he noted he was never advised that, as a direct consequence of his plea, he would have to register as a sex offender, and furthermore, that this registration requirement would continue for life pursuant to section 290.

Citing the reporter's transcript of his sentencing on January 5, 1989, Taghilou noted the trial court relied on the probation report and the report from his section 1203.03 diagnostic study in sentencing him to formal probation for a period of three years; in informing him of his conditions of probation, the trial court told Taghilou: "you must register within the brief period of time as an offender, and I am requesting a six-week report from the probation officer. You will have to show him or her proof that you have registered and do so in a timely fashion, so he or she can have a report to the court in six weeks time." Taghilou added: "There was nothing in the record to show that the court at the time of sentencing advised [him] he would have to register as a sex offender and that this registration was required for life."

Citing the trial court's docket entries and order of July 24, 1992, Taghilou said his 1988 conviction had been set aside and the case dismissed pursuant to section 1203.4.

Finally, citing the August 1997 document, he noted he had obtained a certificate of rehabilitation pursuant to section 4852.01.

---

power or authority conferred by law upon the State Bar of California or any board or committee thereof." (§ 4852.15.)

In support of his motion to vacate his conviction, Taghilou also submitted his own declaration, stating as follows: He came legally to the United States from the Islamic Republic of Iran in 1983 when he was 23, "a stranger to the ways, customs and laws of the United States." Shortly thereafter, he became a green card holder with permanent resident status in 1985 and eventually became a successful licensed electrical contractor, married an American citizen in 2004 and had two young children, and they had all lived together as a family in the Santa Clarita Valley area.

When he entered his no contest plea, Taghilou testified, I was "still relatively new to the United States and was not that familiar with its customs and laws and had difficulty with English as a second language since [his] native tongue is Far[s]i. Before his no contest plea, neither the court nor his probation officer ever advised him he would have to register as a sex offender and that this obligation was for the rest of his life. Because of this lack of knowledge, Taghilou said, he did not register during the course of his probation. After completing probation, his conviction was "expunged pursuant to . . . section 1203.4."[10]

"It was only after I was contacted by the Los Angeles County Sheriff's Department in 1996 that I was first informed of my duty to register as sex offender each year. After being so informed I have registered as required and have done so through the present. The following year 1997 I petitioned for and obtained a Certificate of Rehabilitation from the court."

---

[10] As explained in *People v. Holman* (2013) 214 Cal.App.4th 1438, the "release[ ] from all penalties and disabilities" described in section 1203.4 is sometimes referred to as "expungement" of the conviction. Strictly speaking, however, section 1203.4 does not "expunge" the conviction nor render it "a legal nullity." (See *People v. Frawley* (2000) 82 Cal.App.4th 784, 791.) For example, charges dismissed under section 1203.4 may be treated as convictions for some purposes, such as impeachment through the use of the prior conviction in a future prosecution. However, the "release[ ] from all penalties and disabilities" is a "palpable benefit, such that the conviction may be treated as if it were not a conviction for most purposes." (*People v. Holman, supra,* 214 Cal.App.4th at p. 1463.)

In his declaration, Taghilou further stated he was unaware of the legal defect in the court's failure to inform him of the duty to register as a sex offender for life at the time he pled no contest to the charge on which his conviction was based, and later at sentencing, he took no action to remedy something about which he was ignorant. "Over the 25 years since the alleged offense took place on January 16, 1987," he had "never had any other sexual violations or problems of this nature. Since registering as a sex offender in 1996, [he] had never experienced any repercussions or problems which arose from his registration pursuant to . . . section 290 until recently." Taghilou testified: "During 2011 a neighbor . . . who is a retired Los Angeles County [Deputy] Sheriff . . . became aware of my sex offender registrant status and began publicizing this to the other neighbors and to the school . . . my two young children attend. She has told all of the other parents who have children in class with my children about my past offense. As a result of this situation my children have to go to [a] school which is over 10 miles away from our home rather than to the local school and we cannot let our children play in either the front or backyards to our home because they are traumatized by the harassment."

Taghilou said he then "sought the advice of counsel to see if anything could be done to remedy this situation." It was only after counsel reviewed the record that it was revealed to him that at the time he entered his plea and later at sentencing the trial court failed to advise him that as a result of pleading no contest and being sentenced on the charge of which he was convicted that he would be obligated to register as a sex offender and this required him to register for the rest of his life. "If I had been informed of this lifetime registration requirement at the time of my plea to the charge and sentencing for this conviction I would never have pled to the charge but would have gone to trial and asserted my defense. Even though at the time of my plea to the charge it was revealed by the prosecution that they had witness and proof problems with their case I followed my attorney's advice of taking the offer of exposure of only 3 years in prison with a possible probation sentence after a diagnostic study. It was after learning last year about the

14

court's failure to follow the responsibility it had to inform me of the registration requirement as a sex offender and that I would have to do this for life under . . . section 290 that I decided to seek the remedy of vacating my conviction."

Taghilou's motion was originally set for hearing on July 12, 2012. However, the motion was continued several times over the next nine months (to September 21, then to November 9, then to January 7, 2013, then to February 15, then to March 22), with the trial court's minute orders indicating: "***NO LEGAL FILE***PENDING RECEIPT FROM ARCHIVES***"

On March 22, the trial court noted Taghilou had filed an additional brief "in regard to the court's indicated [ruling] that was made on February 15" and continued the hearing to March 27.[11] Taghilou filed a document entitled "authority for the court to order that the defendant is no longer required to register as a sex offender pursuant to . . . section 290," arguing the remedy for violation of a plea bargain is either specific enforcement of the plea bargain or allowing the defendant to withdraw the plea.

Although it appears the district attorney had not filed any opposition or response to Taghilou's motion—in advance of the original hearing date or at all, on March 27, the deputy district attorney (Karen Tandler) told the court she had been "able to obtain the D.A. file; and there was a paralegal who had been working on this case prior to her transfer. [¶] She obtained some documentation that may be helpful for the court. One of the documents that she obtained was a certified four-page document showing the defendant requesting a registration change of address, a 290 PC registration change of

---

[11]     There is no minute order or tentative ruling for February 15, 2013 in the record on appeal. At the March 27, 2013 hearing, the trial court indicated it "want[ed] to refer to the transcript of February 15, 2013 where if this matter goes up that that is part of the record because the court gave its reasons in great detail as to an indicated." Again, however, there is no reporter's transcript of proceedings conducted on that date (February 15, 2013).

15

address."[12]  The significance, she said, was that Taghilou had registered for years, and he was fully aware of his duty and requirement to register."  She said she also had a "[section] 290 printout" showing registration from 1991 through 2012, which she argued "shows this was not a surprise . . . ."[13]  Defense counsel (Sacks, Taghilou's counsel at the time of his plea and sentencing) said "it shows that he was advised by some way three years into his probation."  The trial court responded:  "The problem is that in 1996 when he started registering as a sex offender he knew then. [¶ O]ne can easily infer from the fact that he started reporting every year thereafter after the sheriff gave him notice you better start registering that it was lifetime; and he waited 16 years before he moved to vacate, which deprives the People if I vacate the conviction on the plea and the sentence of any success of retrying him.  [¶] In other words, he's prejudiced the prosecution's case with his untimely and stale motion. [¶] There was never any prejudice in this court's opinion to the defendant . . . if he wasn't told of lifetime registration because he got a deal that he would never have gotten had not Judge Taylor sent it out for a diagnostic under [section] 1203.03 and then put him on probation. [¶] So he wanted that deal; and I'm saying the [section] 290 registration would have never been an impediment.  [¶] He wanted to stay out of prison[;] he wasn't worried about the registration by virtue of his conduct."

The trial court continued:  "I'm making a comparison, an analogy to [section] 1061.5, where a person isn't told of the consequences of his plea, his deportation, denial of reentry and naturalization and amnesty.  [¶] The case law in that particular area says

---

[12]  She later identified this four-page document as Exhibit 2, stating that it contained Taghilou's fingerprints, date of birth and identifying information, demonstrating, she said, that as early as June 22, 1990, he submitted a "[section] 290 registration change of address."  The trial court admitted the exhibit into evidence, but it is not part of the appellate record.

[13]  She referred to this document as Exhibit 1, the trial court admitted it as well, but it is not part of the appellate record either.

that the defendant must show prejudice, and that a reasonable probability exists that but for not being informed he would have not pled guilty and would have insisted on proceeding to trial. [¶] Whether there is prejudice in a given case varies depending upon the individual facts of each case. [¶] The defendant wanted to stay out of prison and he did because of the successful efforts of his present counsel Mr. Sacks.

Defense counsel responded that, "Just to get an issue of prejudice . . . the transcript shows that one of the reasons for this [']super deal['] was that the prosecution did have witness problems and problems of proof." He then read from the August 22, 1989 plea hearing transcript.

The trial court interjected: "We all know that once the trial starts the case takes on a life of its own and it resolves one way or the other."

Defense counsel continued: "I think there is an issue that deals with prejudice, but we have the time factor that I don't think for the vacation of the plea we can overcome because the People are prejudiced at this late date. [¶] They had witness problems back then. How are they going to get the witnesses now? [¶] That's why I came in with my second thrust of argument dealing with specific performance limiting this court—"

Again, the trial court interjected: "I can't do it, though. *I would do it if I could.* [¶] Registration for someone who has sex with a child under the age of 14 is mandatory. *I don't have the discretion* in my opinion." (Italics added.)

When the prosecutor cited to the fourth page of the reporter's transcript for Taghilou's sentencing hearing when "proof of registration" was mentioned, the trial court agreed "he was told that he'd have to report[, and] there was no objection at that time, but it didn't say lifetime . . . . I don't think that's an impediment to the court's ability to rule that there is no prejudice to the defendant and the prosecution is prejudiced by the defendant waiting 25 years to vacate a plea." Later, after further discussion about when he first knew to register, the trial court reiterated: "So the defendant knew he had to

17

register for life, and he waited 25 years to come to this court and vacate his judgment after he knew he had to register."

Defense counsel responded: "I'm not arguing with that."

The trial court: "That's a tremendously untimely staleness issue."

Defense counsel: "I'm just trying to focus on limited performance because of the court's failure to advise him of the direct consequence of his plea."

The trial court: "I read the case law on that subject matter, and I cited those cases for you that were the exceptions made on equal protection and so forth with registration; and I cannot find a case that says I have the discretion to excuse that as a condition to the plea. It's mandatory if it's a child under 14, which it was in this case. [¶] Do you have a case on point?"

Defense counsel said he had cited to *People v. Walker* (1991) 54 Cal.3d 1013 (overruled in part by *People v. Villalobos* (2012) 54 Cal.4th 177, 183) which dealt with a restitution fine, not registration.

Again, the trial court indicated: "I believe that that subject matter of a child under 14 is so serious that *the court does not have the discretion* to in any way at this late stage strike it as a condition of his original plea. (Italics added.)

"So I'm going to deny your request; and to be more specific it's stale.

"The defendant did have scienter regarding registration and waited 25 years to vacate it; and he was told to register and the issue should have been raised then, register when, how often, and so forth, plus there is no prejudice.

"The defendant got a deal that you will never see for the type of fact situation that existed in this case.

"He got a diagnostic report and he was put on probation after he came back from the [section] 1203.03 and never had to do time in state prison.

"So the motion is respectfully denied.

18

"Take it up.  Maybe they'll make an exception and say in a rare fact situation like this the court does have discretion to exercise and strike that as a requirement, but I'm not going to do it until a court of higher jurisdiction orders me to do so.

"Everything I've read—I have a sex crime manual four inches thick that covers everything and it's kept current.  It says it's mandatory.

"So that's the reason for my ruling."

Taghilou appeals.[14]

## DISCUSSION

*The Trial Court Erred in Concluding It Lacked Discretion to Enforce the Terms of the Plea Agreement Entered into By the Prosecutor on Behalf of the People and Defense Counsel on Taghilou's Behalf and Approved by the Trial Court at that Time.*

First, Taghilou argues, he should be relieved of his obligation to register as a sex offender for life because he was not advised of this burden at the time he entered a plea in the underlying case, and lifetime registration was not a part of the plea agreement. "[T]his is an issue of enforcing a binding agreement—a legal offer made and accepted, with each side receiving certain and specific consideration," and his "detrimental rel[iance] on the terms of the plea agreement"—terms which Taghilou says did not include registration as a sex offender.

---

[14]    In *People v. Picklesimer* (2010) 48 Cal.4th 330, 339-340 (*Picklesimer*), our Supreme Court explained that the proper procedural mechanism for challenging a lifetime sex offender registration obligation is by petition for writ of mandate filed in the trial court, rather than the motion to vacate Taghilou filed (and after filing this appeal, Taghilou also filed a petition for writ of mandate (B249670), but we dismissed that petition in light of this pending appeal).  In any case, we address Taghilou's challenge to his mandatory obligation to register as a sex offender for life on its merits.  "[E]very right must have a remedy," (*id*. at p. 339) and "[t]he label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading." (*Picklesimer, supra,* 48 Cal.4th at p. 340.)

As our Supreme Court explained in *People v. Segura* (2008) 44 Cal.4th 921, "the process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court.[15] (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People v. West* (1970) 3 Cal.3d 595, 604–608 [91 Cal. Rptr. 385, 477 P.2d 409].) Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. (*People v. West, supra*, 3 Cal.3d at p. 604.) This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment (§ 1192.5), by the People's acceptance of a plea to a lesser offense than that charged, either in degree (§§ 1192.1, 1192.2) or kind (*People v. West, supra*, 3 Cal.3d at p. 608), or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People v. West, supra*, 3 Cal.3d at pp. 607–608.) But implicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in

---

15     "Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 [8 Cal. Rptr. 2d 713, 830 P.2d 747]; *People v. Panizzon* (1996) 13 Cal.4th 68, 79–80 [51 Cal. Rptr. 2d 851, 913 P.2d 1061] (*Panizzon*).) Plea agreements benefit that system by promoting speed, economy, and the finality of judgments. (*Panizzon, supra*, at p. 80; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1658 [17 Cal. Rptr. 2d 445]; see also *In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5 [134 Cal. Rptr. 2d 54, 68 P.3d 347] [noting judgments based upon plea agreements 'represent the vast majority of felony and misdemeanor dispositions in criminal cases,' and citing statistics indicating that less than 5 percent of felony cases are disposed of through felony convictions resulting from a court or jury trial].)" (*People v. Segura, supra,* 44 Cal.4th at p. 929.)

20

an agreement between them.  (See *People v. West, supra*, 3 Cal.3d at pp. 604–605.)'
. . . ." (*People v. Segura, supra,* 44 Cal.4th at pp. 929-930, additional citations omitted.)

"""When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.""" (*People v. Segura, supra*, 44 Cal.4th at pp. 930–931, original brackets.)  "Thereafter, material terms of the agreement cannot be modified without the parties' consent." (*People v. Martin* (2010) 51 Cal.4th 75, 80.)  "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles.  [Citations.]  'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  [Citation.]'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

In *Swenson v. File* (1970) 3 Cal.3d 389, 393 (*Swenson*), our Supreme Court stated: """"all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated,""" and "laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties."  Consequently, "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent . . . ." (*Id*. at p. 394.)

Recently, in *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*), our Supreme Court addressed this rule from *Swenson* in the context of a plea agreement.  At issue was whether the defendant's plea agreement was violated by applying a retroactive amendment to California's Sex Offender Registration Act, section 290 et seq.[16]  (*Id.* at p.

---

[16]   In *Doe v. Harris, supra,* 57 Cal.4th 54, the plaintiff had filed a civil complaint in the United States District Court, asserting that requiring him to comply with the public notification provisions of "Megan's Law" (§ 290.46, added by Stats. 2004, ch. 745, § 1,

65.)  Responding to a question certified by the United States Court of Appeals for the Ninth Circuit, the *Doe* court drew a distinction between *Swenson*, *supra,* 3 Cal.3d 389, which involved a change in law not intended to apply retroactively, and *People v. Gipson* (2004) 117 Cal.App.4th 1065 (*Gipson*), in which the court applied a retroactive change in recidivism sentencing notwithstanding the parties' plea agreement under prior law.  (*Doe*, *supra*, at pp. 69-70.)  In contrast to *Swenson*, the *Gipson* court applied the following rule: "'"When persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . ."'"  (*Doe*, *supra*, 47 Cal.4th at p. 70, quoting *In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 112.)

As explained by the *Doe* court, both of these cases recognize "that the Legislature, for the public good and in furtherance of public policy, *and subject to the limitations imposed by the federal and state Constitutions*, has the authority to modify or invalidate the terms of an agreement.  Our explanation in *Swenson* that, as a general rule, contracts incorporate existing but not subsequent law, does not mean that the Legislature lacks authority to alter the terms of existing contracts through retroactive legislation.  Nor should it be interpreted to mean that the parties, although deemed to have existing law in mind when executing their agreement, must further be deemed to be unaware their contractual obligations may be affected by later legislation made expressly retroactive to

pp. 5798-5803), would violate his 1991 plea agreement.  (*Doe, supra,* 57 Cal.4th at p. 67.)

In responding to the Ninth Circuit's request for clarification of California law on the subject, our Supreme Court framed the question presented as follows:  "Under California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?"  (*Doe, supra,* 57 Cal.4th at p. 66.)

22

them, or that they are implicitly agreeing to avoid the effect of valid, retroactive legislation. *Gipson* explains that the parties to a plea agreement—an agreement unquestionably infused with substantial public interest and subject to the plenary control of the state—are deemed to know and understand that the state, *again subject to the limitations imposed by the federal and state Constitutions*, may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Doe, supra*, 57 Cal.4th at p. 70, italics added.) Emphasizing that both holdings reflected California law and were not inconsistent, the *Doe* court concluded: "*Gipson . . .* applies here, while *Swenson* does not[,]" noting the amendments to the Sex Offender Registration Act at issue in *Doe* were expressly made retroactive by the Legislature while *Swenson* considered the effect on a commercial contract of a change in the law that was not intended to apply retroactively. (*Doe, supra,* 57 Cal.4th at p. 70.)

The *Doe* court also reasoned: "[T]he parties to a particular plea bargain might affirmatively agree or *implicitly understand* the consequences of a plea will remain fixed despite amendments to the relevant law," noting this inquiry "presents *factual* issues that generally *require an analysis of the representations made and other circumstances specific to the individual case*." (*Doe, supra*, 57 Cal.4th at p. 71, italics added.)

The *Doe* court had emphasized preliminarily: "Our task is limited. . . . For present purposes, we assume the Legislature's decision to make the amendments to the sex registration requirements retroactive comports with federal and state constitutional requirements, including due process, the prohibition against ex post facto laws, and the federal and state contract clauses that prohibit states from passing laws impairing the obligation of contracts.

"We also do not assess the merits of the parties' factual assertions or consider whether the district court's factual findings, as explained to us by the Ninth Circuit, are supported by the evidence. [Citation.] We accordingly accept as true the Ninth Circuit's representation that neither the parties' negotiations nor the express terms of the plea agreement addressed whether Doe's identity would remain forever confidential or

23

included an affirmative promise that Doe would be exempt from changes in the law affecting persons convicted of his offense." (*Doe, supra,* 57 Cal.4th 64, 68.) We note that in *Doe, supra,* 57 Cal.4th 64, the written change of plea form Doe had signed at the time of his plea "recited that the maximum penalties for Doe's conviction would be probation, participation in a work furlough program, fines, testing as required by former section 290.2, and *registration as a sex offender under section 290.*" (*Doe, supra,* 57 Cal.4th at p. 66, italics added.)

The *Doe* court clearly stated the "general rule in California" is that "requiring parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Doe, supra,* 57 Cal.4th at pp. 73-74.) However, the *Doe* court also recognized that "the parties to a particular plea bargain might *affirmatively agree or implicitly understand* the consequences of a plea will remain fixed despite amendments to the relevant law. [Citations.] [¶] Whether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Doe, supra,* 57 Cal.4th at p. 71.)

Therefore, we must turn to the issue of whether the record shows the parties in this case "affirmatively agreed or implicitly understood" Taghilou's obligation to "register . . . as an offender" was, as he argued, limited in duration. Constitutional due process requires that "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.'" (*People v. Arata*[*, supra,*] 151 Cal.App.4th [at p.] 786 (*Arata*), quoting *Santobello v. New York* (1971) 404 U.S. 257, 262.) Furthermore, "due process requirements apply not only to the taking of the plea, but also to implementation of the bargain." (*Arata, supra,* 151 Cal.App.4th at p. 786,

citing *People v. Mancheno* (1982) 32 Cal.3d 855, 860 [specific performance of omitted term of plea bargain calling for diagnostic study].) "'It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy.' (*Ibid.*) 'This does not mean that *any* deviation from the terms of the agreement is constitutionally impermissible.' (*People v. Walker*[, *supra*,] 54 Cal.3d [at p.] 1024, original italics.) Rather, the variance must be "'significant" in the context of the plea bargain as a whole to violate the defendant's rights.' (*Ibid.*; see *Santobello v. New York, supra,* 404 U.S. at p. 262.)"[17] (*Arata, supra,* 151 Cal.App.4th at pp. 786-787.)

Here, rather than evaluating the negotiated plea agreement in this case and interpreting it according to general contract principles as our Supreme Court has described (*People v. Shelton, supra,* 37 Cal.4th at p. 767), the trial court found itself constrained by the mandatory lifetime registration requirement under section 290 for violation of section 288a, subdivision (c), the offense to which Taghilou pled. Accordingly, we conclude remand is necessary to allow the trial court to conduct an evidentiary hearing to determine whether there was "an affirmative agreement or implicit understanding [otherwise] between the parties" (*Doe, supra,* 57 Cal.4th at p. 71) as to the consequences of Taghilou's plea pursuant to the plea agreement in this particular case, notwithstanding the language of the statute to which Taghilou entered his no contest plea as well as subsequent statutory amendments.

As explained in *People v. Shelton, supra*, 37 Cal.4th at page 767, "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs.

---

[17] In *Arata, supra,* 151 Cal.App.4th at page 787, the issue was whether "denial of section 1203.4 relief would be a 'significant' variation in the context of the entire plea bargain so as to violate a defendant's constitutional rights" (*id*. at p. 787), such that the defendant may be entitled to specific performance despite subsequent changes in the law that made the promise statutorily unauthorized. (See *id*. at pp. 782, 786-788 [state must comply with section 1203.4 promise despite subsequent amendment to statute excluding sex offender defendant from statute's coverage]; see also *Doe v. Brown* (2009) 177 Cal.App.4th 408, 414, fn. 7.)

[Citation.] On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.'"

According to the record in this case, however, at the time of Taghilou's plea, there was *no* mention of section 290 or the obligation to register as a sex offender or the fact this obligation would last for the duration of Taghilou's life.[18] Failure to advise the defendant of his statutory obligation to register as a sex offender constitutes error. (*People v. McClellan* (1993) 6 Cal.4th 367, 379.) In *McClellan, supra,* 6 Cal.4th at pages 377-378, the court determined such error was harmless because the defendant had failed to object to the imposition of the registration requirement at the time of his sentencing and had failed to demonstrate prejudice arising out of the error. Here, however, Taghilou was not informed that he would be obligated to register as a sex offender for life at the time of his plea *or* at sentencing; to the contrary, in fact, according to the record, the first mention of any obligation to register (without mention of section 290) was at the sentencing hearing and further, he was told—in the context of a recitation of the various terms and conditions of his *probation--* he would have to register "within the next brief period of time" as an offender. (See *People v. Martin, supra,* 51 Cal.4th at p. 80

---

18 "A negotiated plea of guilty or no contest requires the defendant to waive his or her constitutional rights related to trial. (*Panizzon, supra*, 13 Cal.4th at p. 80.) Prior to accepting the plea, the trial court must inform the defendant of the constitutional rights being waived *and the direct consequences of the plea.* (*Panizzon, supra*, at p. 80; *Walker, supra,* 54 Cal.3d at p. 1022.)" (*People v. Segura, supra,* 44 Cal.4th at p. 931, fn. 6, italics added.)

26

["Thereafter, material terms of the agreement cannot be modified without the parties' consent"].) In fact, at sentencing, the trial court was more careful in specifying that Taghilou would have to pay a restitution fine in the amount of $100 pursuant to section 1203.4 and repeatedly stressed that Taghilou's obligation to attend counseling during his probation was the most important component of the plea agreement.

Indeed, at the hearing on Taghilou's motion for relief from the registration requirement, the trial court expressly agreed Taghilou was never told he was obligated to register as a sex offender under section 290 for the duration of his life. As in *People v. Zaidi* (2007) 147 Cal.App.4th 1470, and unlike the mere "*assertion*" of prejudice noted in *McClellan, supra*, 6 Cal.4th at page 378, original italics, Taghilou presented *evidence* of prejudice—he submitted his own declaration stating he never would have plead as he did had he known he would be subject to a mandatory lifetime registration requirement as a result and instead would have asserted his defense at trial. "Sex offender registration imposes a 'substantial' and 'onerous' burden on the registrant." (*People v. Zaidi, supra,* 171 Cal.App.4th at p. 1483, citation omitted.) "[T]he ignominy and the duration of the registration requirement makes it a particularly harsh sanction, and *only if a defendant is apprised of the duration can he or she fully appreciate the gravity of the consequence of the plea, so as to make the plea voluntary and intelligent*." (*Id.* at p. 1482, italics added.)

Furthermore, notwithstanding the intervening (and retroactively applied) amendments to the statutory scheme, *at the time of Taghilou's plea*, dismissal under section 1203.4 was a prerequisite to obtaining a certificate of rehabilitation; and a certificate of rehabilitation (§ 4852.01 et seq.) was a prerequisite to *relief* from the obligation to register as a sex offender pursuant to section 290 et seq. Indeed, an examination of the "objective manifestations of the parties' intent," (*People v. Shelton, supra,* 37 Cal.4th at p. 767), including the parties' own subsequent conduct establishes that Taghilou sought and obtained dismissal of his conviction under section 1203.4--with proper notice to but without opposition from the prosecutor. Similarly, he sought and obtained a certificate of rehabilitation from the trial court with notice to but no opposition

27

from the prosecutor. To the extent the terms of Taghilou's "promise are in any respect ambiguous or uncertain," the trial court must interpret that promise "in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (*Ibid.*)

"'When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.'" (*People v. Segura, supra,* 44 Cal.4th at pp. 930-931, citations omitted.)

At the time of Taghilou's plea and indeed until 1997 (when Taghilou obtained his certificate of rehabilitation), the statutory scheme including sections 1203.4 and 4852.01 et seq. contemplated an offender such as Taghilou could withdraw his plea of no contest, enter a plea of not guilty and have the case against him dismissed upon demonstrating his satisfaction of the prerequisites for such relief set forth in section 1203.4[19] and, furthermore, in turn, could then petition for a certificate of rehabilitation upon meeting all of the conditions of sections 4852.01 et seq. Indeed, as our Supreme Court emphasized in *People v. Ansell* (2001) 25 Cal.4th 868, pursuant to section 4851.13, subdivision (a), "To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction." (*Id.* at pp. 875-876.) Furthermore, "'No certificate of rehabilitation shall be granted to a person convicted of any offense specified in Section 290[, the sex offender registration statute,] if the court determines that the petitioner presents a continuing threat to minors of committing any of the offenses specified in Section 290.'" (*Id.* at p. 876 and fn. 12.)

Here, not only did Taghilou meet all of the requirements imposed on him pursuant to sections 4852.01 through 4852.15 as they existed in 1997, but according to the record,

---

[19] Indeed, pursuant to subdivision (d) of section 1203.4, no relief may be granted unless the prosecuting attorney receives 15 days' notice of the petition, and pursuant to subdivision (e), where (as here) the prosecuting attorney has received notice and fails to object, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that [section 1203.4] petition."

the district attorney's office received notice throughout the proceedings and appeared on each occasion but never voiced any objection to the relief granted.  In other words, recognizing the seriousness of the offense to which he originally pled, in the 25 years since his plea, Taghilou has not only committed no further offense but has affirmatively demonstrated the unlikelihood of further offense by the means the Legislature had previously made available—even to offenders such as Taghilou.  (See *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79.)

In this case, the trial court stopped short of interpreting the negotiated plea agreement involved in this particular case.  Consequently, we remand the case to allow the court to conduct an evidentiary hearing and determine whether there was an affirmative agreement or implicit understanding between the parties regarding the consequences of defendant's plea, notwithstanding subsequent amendments to the statutory scheme.  (*Doe v. Harris, supra*, 57 Cal.4th at p. 71.)

Given this remand, we need not address Taghilou's alternative claim that denial of his motion violates his constitutional right to equal protection.  (See *People v. Hofsheier* (2006) 37 Cal.4th 1185.)

### *DISPOSITION*

The order denying Taghilou's motion is reversed and the case is remanded for proceedings consistent with this opinion.

**WOODS, Acting P. J.**

**We concur:**

**ZELON, J.**                                        **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.